Price, J.
We are not troubled in this case with any controversy or doubt about the facts. They are few and very clear, the defendant himself having taken the witness stand apparently to remove all question as to his attitude in reference to the sale of the beer at the time and place mentioned in the indictment. He was the manager of the Tuscarawas Valley Brewing company, located in Canal Dover, and while he did not personally make the sale to Kuemerly, it was made by one Murphy, on the premises and under defendant's authority, who by his own testimony assumed all responsibility for making the sale as it was' made. The transaction occurred several months after the electors of the county, at an election held under the county local option law, by a considerable majority had voted in favor of prohibiting the sale of intoxicating liquors within the county.
The purchaser at the sale referred to says that he bought at the brewery a case, consisting of two dozen pint bottles of beer — bought it to drink and took it home and drank it. He paid for it, and this beer was made at this brewery. The contents of the bottles aggregated more than one gallon.
The defendant, now plaintiff in error, testified that sales were made at the brewery after the *150 said election just the same as before, and he and his superiors claimed then, and insist now that they had a legal right to continue to make such sales regardless of the 'results' of the vote of the people. If they were violating the law, they did it defiantly, and with a view, as counsel say, of having a test made of the law and their rights and liabilities under it. This purpose is boldly announced in the brief, and that it might not fail on account of any defect in the indictment, or lack of proof to sustain some allegation, aside from that of the sale as charged, counsel for plaintiff in error entered into written stipulation with the state, which appears of record, attempt-' ing to waive formal defects in the indictment and any lack of proof to sustain certain allegations therein. This way of curing defects, if any, is entitled to take rank as a new discovery in criminal practice, but counsel for plaintiff in error, in all after stages of the case, seems to have abided by the stipulation, apparently through the pressing desire of his client to have a test case made oh the facts and the law applicable to such facts.
The courts below have agreed upon the judgment in the test case, and it now' waits our opinion.
In the character of the instructions which defendant desired given to the jury, the question of the case is evident, but lest we might not comprehend it, counsel mould it in the brief as follows: “Can there be a conviction of the manufacturer, whether he be a person or corporation, under the county local option law, where the manufacturer, who is a manufacturer of beer from *151 the raw material, sells it at the manufactory in' quantities of a gallon or more?” -
We proceed to answer, and note that in various forms of positive assertion, we are urged to believe, that notwithstanding Tuscarawas county was voted “dry” (as the term goes) under the provisions of a law that is plain and free of ambiguity, the manufacturer of beer in such county can legally sell it at the place of making, to be used as a beverage, if the quantity sold is one gallon or more. Saloons and other places where beer is retailed in any quantity whatsoever must close, but the manufacturer may, like the brook, “go on forever,” if he does not condescend to sell in quantities less than one gallon. The fountainhead may flow in gallon or- larger measures, and the thirsty may flock thither and buy, drink and take away for beverage purposes, so they buy in gallon or larger quantities, thus giving the manufacturer a monopoly of the business, and that, too, free of the tax which the state imposes on the saloon or other retailer. The manufacturer —the brewer in this case — becomes a person of most exalted privilege.
At page seventeen of brief for plaintiff in error, counsel exclaim: “In the case at bar, the Tuscarawas Valley Brewing company sold the liquor in a quantity of a gallon or-more to Kuemerly, as it had a perfect right to do. The' company mas not amenable to the payment of the Doto tax, nor to the operation of any of. the provisions of the Rose law upon which this indictment is predicated.” True, the sale under review was of two dozen pint bottles of' beer, and these pints must *152 be added in order to get within the gallon standard, but we apprehend the sale was not made with the expectation that the purchaser would gulp all down at once, but rather use the bottles singly, at least one at a time, for beverage purposes. Can counsel’s view of this law be sound?
Let us see.
The act is entitled: “An act further to provide against the evils resulting from the traffic in intoxicating liquors by providing for local option in counties.” It was passed March 5, 1908, and took effect September 1, 1908. (99 O. L., 35.)
The first section provides that thirty-five per cent, of the qualified electors of the county may petition the commissioners or any common pleas judge of the county for the privilege to determine by ballot “whether the sale of intoxicating liquors as a beverage shall be prohibited within the limits of such county,” etc. Acting on such petition a special election is to be ordered, and notice thereof given, which shall be conducted in all respects as are elections for county officers. The result of the election shall be forthwith “entered upon the record of the proceedings of the commissioners, and with the clerk of the common pleas court,” and in all trials for violation of this act, the original entry of the record, or a copy thereof certified by the clerk of the county common pleas court or any commissioner, provided that said record shows that a majority of the votes cast at said election was against the sale of intoxicating liquors as a beverage, “shall be prima facie evidence that the selling, furnishing' or giving away of intoxicating liquors as a beverage, or the keep *153 ing of a place where such liquors are sold, kept for sale, given away or furnished, if such selling, furnishing or giving away or keeping of such place occurred after thirty days from the day of holding the election, was then and there prohibited and unlawful.”
Section 2 provides for the form and contents of the ballot to be voted, and then provides that “if a majority of the votes cast at such election shall be in favor of prohibiting the sale of intoxicating liquors as a beverage, then from and after thirty days from the date of holding said election, it shall be unlawful for. any person personally, or by agent, within the limits of such county to sell, furnish or give away intoxicating liquors to be used as a beverage, or to keep a place where such liquors are kept for sale, given away or furnished for beverage purposes, and whoever from and after the thirty days aforesaid violates any of the provisions of this act or in any manner directly or indirectly, sells, furnishes, or gives away or otherwise deals in any intoxicating liquors as a beverage, or keeps or uses a place, structure or vehicle either permanent or transient, for such selling, furnishing or giving away, or in which or from which intoxicating liquors are sold, given away or furnished, or otherwise deal in as aforesaid, shall be guilty of a misdemeanor, and shall on conviction thereof be fined,” etc.
We see no exception of the brewer or manufacturer, and no privilege defined if sold, furnished or given away in quantities of one gallon or more. There is no intimation of such exemption in favor of anyone.
*154 Section three defines the meaning of the phrase “intoxicating liquor” as “any distilled, malt, vinous or any intoxicating liquors whatever.” The only limitation placed on the operation of the statute is found in the section where it is said, “but nothing in this act shall be construed to prevent the selling of intoxicating liquors at retail by a regular druggist for exclusively known medicinal, pharmaceutical, scientific, mechanical or sacramental purposes; and when sold for medicinal purposes, it shall be sold only in good faith upon a written prescription, signed and dated in good faith. by a reputable physician in active practice and the prescription used but once. The words giving away where they occur in this act, shall not apply to the giving away of intoxicating liquors by a person in his private dwelling unless such private dwelling is a place of public resort.” The legislature has carefully hedged about the exception or exemption from the operation of this statute.
The other sections concern matters of procedure —what shall constitute thirty-five per cent, of the electors of the county; the character of record to be made of the results of the election; disposition of fines, etc. The bill as enacted is complete within itself, not depending or conditional upqn any other statute for construction or operation, and on the conceded fact in this case that the beer was sold and purchased to be used as beverage, we are unable to see in this statute any place of refuge for the defendant.
However, it is argued by counsel that it should be construed with reference to the provisions of *155 the township and municipal local option statutes, but more especially to Section 8 of an act passed March 21, 1887, (84 O. L., 224), recently Section 4364-16, Revised Statutes. This section is part of the so-called Dow law, assessing a tax on the business of trafficking in intoxicating liquors, and for the purpose of applying the argument, we quote the section. “The phrase Trafficking in intoxicating liquors’- as used in this act, means the buying or procuring and selling of intoxicating liquors otherwise than upon prescription issued in good faith by reputable physicians in active practice, or for exclusively known medicinal, pharmaceutical or sacramental purposes, but such phrase does not include the manufacture of intoxicating liquors from the raw material, and the sale thereof at the manufactory, by the manufacturer of the same in quantities of one gallon or more at any one time.” This section was amended as to the amount of the- tax by the so-called Aikin law in 98 Ohio Laws, 99, or Section 4364-9, Revised Statutes (Bates’).
Counsel for plaintiff in error also refer to the provisions of the local option laws in townships, being Section 4364-24, et seq.; and the municipal local option law, being Section 4364-20a; and the so-called Brannock residence district local option law, being Section 4364-30a; and we are asked to throw the county local option law into hotch-pot with the others and consider them as one scheme of legislation, construing the county option law with liberal consideration of the other enactments. It is then added, that as all these are a part of *156 chapter 7, Revised Statutes, such mode of construction is necessary.
At this point, it must he observed that since the revision of 1880, until recently, we have had no legislative revision‘of our statutes, and the order in which the statutes were placed, after enactment, was determined by the compiler or publisher of what we have been prone to call the Revised Statutes. Hence the legislature had made no attempt. to weld or merge them. Who has the right or authority to say that the county local option law is but a part only of the former legislation on the liquor traffic? It in no word or phrase refers to prior enactments for local option in townships or municipalities, nor to the statutes taxing the traffic, and it should not be thus unceremoniously consigned to the fellowship of other independent prior statutes. The compiler had' not performed this service as to the act under consideration, when the present controversy started in the courts. However, we may be benefited by a cursory notice of these prior local option statutes. The exception in the township local option law is in favor of one who manufactures and sells cider, or wine manufactured from the pure juice of the grape cultivated in this state; and in favor of a legally registered druggist who sells or furnishes pure wines or liquors for exclusively known medicinal, art, scientific, mechanical or sacramental purposes; but the exception is not to be construed to authorize the keeping of a place where wine, cider or other intoxicating liquors are sold, kept for sale, furnished or given away as a beverage.
*157 The law for local option by municipalities, has a different and broader exception as found in Section 4364-20b, Revised Statutes. There, it is in favor of a manufacturer of intoxicating liquors from the raw material, “to sell, deliver and furnish his product in wholesale quantities to bona fide retail dealers trafficking in intoxicating liquors, or in wholesale quantities to any party or parties residing outside the limits of said municipality.”
The next section defines the rights of a regular druggist to sell for certain purposes on prescription by a regular physician. A person may give away such liquors in his private dwelling, if the same is not a place of public resort.
The so-called Brannock law contains exceptions of a similar nature.
If the law involved here is to be construed with reference to the prior local option law, which one shall be chosen as the standard of comparison? And why should we single out Section 8 quoted above from the Dow-Aikin law arid measure the Rose law by the terms of that section? Where is the authority to import Section 8, supra, bodily into the county local option law? When the latter was enacted, the legislature is presumed to have known of the pre-existing laws referred to by counsel and already cited herein, and if any of the exceptions or exemptions contained in the former acts were in legislative contemplation to be reflected in, or effect the provisions of the new law, why were they not embraced in it by appropriate language, or intelligent reference? Both are absent and we must observe the rule that an excep *158 tion to the provisions of a statute not suggested by any of its terms should not be introduced by construction from considerations of mere convenience. See Morris Coal Co. v. Donley, 73 Ohio St., 298. Another rule is that consistency of interpretation of a statute is of first importance and requires the assumption that the legislature knew and took into consideration existing legislation. Charles v. Fawley, 71 Ohio St., 50-53. And including none of the provisions of the prior acts, conclusively suggests that they were intentionally excluded.
The principle is akin to the declaration of this court in Slingluff v. Weaver, 66 Ohio St., 621. The first proposition of the syllabus gives the latitude of interpretation. In the second it is said: “But the intent of the law-makers is to be sought first of all in the language employed, and if the words be free from ambiguity and doubt, and express plainly, clearly and distinctly, the sense of the law making body, there is no occasion to resort to other means of interpretation. The question is not what did the general assembly intend to enact, but what is the meaning of that which it did enact. That body should be held to mean what it has plainly expressed, and hence no room is left for construction.”
The plaintiff in error appeals to Senior v. Ratterman, 44 Ohio St., 661, and State v. Rouch, 47 Ohio St., 478, for vindication of his contention, but we- think neither case can be so applied. The question in Senior v. Ratterman, as stated by the court on page 670, was: “Whether wholesale dealers in intoxicating liquors are subject to the *159 tax imposed' 'upon the business of trafficking in spirituous, vinous, malt or any intoxicating liquors’ by the act of the general assembly passed May 14, 1886, entitled 'An act to provide against the evils resulting from the traffic in intoxicating liquors.’ ” The court then quotes Section 8 of the act (Dow law), and discusses former legislation and decisions of the court pertaining to the same, but the principle held by this court is in the second section of the syllabus and which is the law declared, to-wit: ''Wholesale ’ dealers in intoxicating liquors, who are not manufacturers, are within the terms of the act of the general assembly passed May 14, 1886, entitled 'An act to provide against the evils resulting from the traffic in intoxicating liquors,’ and are liable to the tax therein imposed.”
So the point involved and decided was that wholesale dealers in intoxicating liquors, who were not manufacturers, were taxable under that law. It was also decided that the law was valid. There is much in the opinion of the court which might be read with profit in connection with this case, but all of it appears in the report - itself. We find nothing there inconsistent with the views expressed here. In fact what appears on pages 672 and 673 of the report cited sustains the position taken in this case.
The controversy in State v. Rouch, supra, related to obtaining a refunding of a portion of the tax paid where the dealer ceased business before the period paid for. This is manifest in the language found on pages 482, 483 and 487 of the report. Section 4 of the township, local option act and Section 11 of the Dow law were under con *160 sideration as to the right to a ref under, etc., and it is on page 487 that the court uses the language quoted in the brief, to-wit: “The same meaning applies to Section 4 of the township local option act. The provision is similar as to a return of a ratable portion of the tax paid to that of section eleven of the Dow law. The two acts are in pari materia. Their titles and their subject-matter show that they relate to the same subject. One spirit and policy pervade both statutes and the two are intended to be consistent and harmonious. The refunder provided for is intended to be carried out by one and the same officer, and in one and the same way.”
When we bear in mind the ground of contest in State v. Rouch, supra, we will understand how little light it reflects on the question at bar. We know of no rule or decision that authorizes the court to interpolate into a plain statute a section from an entirely different act.
Finally, it is asserted and argued that the Rose law is unconstitutional; that it is not of uniform operation throughout the state, although a law of a general nature; that it is confiscatory in that it destroys property or its values without compensation, and so on. Since Adler v. Whitbeck, 44 Ohio St., 539; Anderson v. Brewster, same volume, 576; Gordon v. State, 46 Ohio St., 607, and numerous later cases reported without opinion, we have regarded the constitutionality of such legislation as foreclosed. These cases reported without opinion, were decided on the authority of the above cases reported with opinion, and we do not feel justified in setting aside such a steady current of authority.
*161 The enforcement of the county local option law may, and doubtless will, work loss in property investments. It doubtless will cause a decrease in the product of the brewery in counties where the law is in force, and therefore the sales of the product, and thereby diminish the value of the plant, itself. Breweries in adjoining counties may thrive because of the misfortunes of their neighbors. Do such results render the law invalid?
The saloonkeeper or other retail dealer has made the same charge, when either township or municipal local option closed his place of business. Some of such places may have been equipped and furnished at great expense and operated for many years. Their investment of money and property differs from that of the brewer in degree only, and yet the financial loss of the keeper of the saloon, however grand its trappings, has never been sufficient to defeat the law.
Why should such appeal succeed now that the legislature has adopted the larger unit of the county as the field of its operations?
Whether the law in question expresses the best public policy on the subject, is not a question for our determination. That pertains to the legislative department, and not to the judiciary.
The judgment of the circuit court is affirmed.

Judgment affirmed

Summers, C. J., Crew, Spear and Davis, JJ., concur.